# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| v. | **MAGISTRATE JUDGE ASHMAN** |
| NORMAN WIMBERLY,<br>TERRY WIMBERLY, and<br>DONTAVIS WILLIAMS | **CASE NUMBER:**<br>**08CR 0055** |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about <u>December 17, 2007</u> to <u>January 22, 2008</u>, in <u>Cook</u> County, in the <u>Northern</u> District of <u>Illinois</u>, <u>Eastern Division</u>, and elsewhere, the defendants:

> conspired to knowingly and intentionally distribute, and possess with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture containing cocaine, a Schedule II Narcotic Drug Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1); all

in violation of Title <u>21</u> United States Code, Section <u>846</u>;.

I further state that I am a <u>Drug Enforcement Administration Special Agent</u> and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT.

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

**FILED**
JAN 2 3 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

_____
Lou Cade, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

January 23, 2008                at    Chicago, Illinois
Date                                   City and State

Martin C. Ashman, United States Magistrate Judge       _____
Name & Title of Judicial Officer                       Signature of Judicial Officer

STATE OF ILLINOIS      )
                       )  SS
COUNTY OF COOK         )

## AFFIDAVIT

I, Lou Gade, having been duly sworn on oath, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA). I have been employed as a Special Agent since October of 2000 and I am currently assigned to the High Intensity Drug Trafficking Areas (HIDTA), Drug Enforcement Administration Task Force, group 47 within the DEA Chicago Field Division, Chicago, Illinois.

2. Thorough my career in the DEA, I have acted as the case agent in several narcotics cases. I have had formal training and experience in the investigation of controlled substance use, manufacturing, and distribution. I have been involved in numerous narcotics investigations that utilized confidential informants. In several of these investigations, informants have purchased and/or obtained controlled substances under my direction or the direction of fellow agents. I have interviewed numerous individuals apprehended for criminal activity on the manner in which they use, buy, and distribute controlled substances. I am familiar with the street terms of various controlled substances and I am familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale and distribution.

3. The information contained in this affidavit is based on my personal knowledge, as well as information obtained from official documents and the personal knowledge of other law enforcement officials, and has been obtained from surveillance, consensually-recorded conversations, and interviews of witnesses.

4. This affidavit is being submitted for the limited purpose of setting forth probable

cause to support a criminal complaint. I have not set forth each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are sufficient to establish probable cause to believe that Norman WIMBERLY, Terry WIMBERLY, and Dontavis WILLIAMS conspired to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of five kilograms of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

### *Background*

5.  On or about December 12 and December 18, 2007, and January 9, 2008, Confidential Source One (CS1) and Confidential Source Two (CS2) had a series of consensually recorded telephone conversations with "Dante" and "Low." Through subsequent DEA surveillance and review of identification materials from the state of Georgia, "Dante" was later identified by law enforcement agents as Dontavis WILLIAMS and "Low" was later identified as Norman WIMBERLY. During these consensually recorded calls, WILLIAMS and WIMBERLY asked about acquiring multi-kilogram quantities of cocaine from CS1 and CS2. WILLIAMS and WIMBERLY indicated that they were from Atlanta, Georgia, and were interested in purchasing cocaine in Chicago to bring back to Atlanta.

6.  It should be noted that both CS1 and CS2 are paid by the government as confidential sources. However, the majority of the information originating from CS1 and CS2 was verified through calls and recordings monitored by law enforcement agents. In addition, CS1 has a long history of cooperating with DEA investigations and has previously provided information found to be highly reliable.

*January 14, 2008 Meeting*

7. On or about January 14, 2008, WILLIAMS called CS2 and indicated that he would be in Chicago later that day. A short time later, CS2 received another call from WILLIAMS, who indicated that he had just arrived in Chicago and that he was at the Courtyard-Marriott Hotel near Midway Airport and wished to meet with CS2. CS2 agreed to meet with WILLIAMS.

8. Before this meeting was to occur, DEA agents and task force officers met with CS1 and CS2. At this time, the agents searched CS1 and CS2 for any contraband and found none. The agents also searched the CS1's car for contraband and again found none. Also at this time, agents outfitted CS1 with a hidden audio/video recording device. CS1 and CS2 then went to the Courtyard-Marriott Hotel located at 6610 S. Cicero, Bedford Park, Illinois. In the parking lot of the hotel, CS1 and CS2 met with Dontavis WILLIAMS and Norman WIMBERLY in CS1's car. CS1 then drove to a TGI Friday's restaurant where CS1, CS2, WILLIAMS and WIMBERLY went inside. During this meeting, CS1, CS2, WILLIAMS and WIMBERLY negotiated the sale of a large quantity of cocaine. It was agreed that CS1 and CS2 would sell WILLIAMS and WIMBERLY at least 10 kilograms of cocaine at approximately $19,000 per kilo. No specific time for this transaction was set.

9. At the conclusion of this meeting, CS1 brought WIMBERLY to the parking lot of the TGI Friday's restaurant to show WIMBERLY that CS1 did in fact have several kilograms of cocaine. In the parking lot, CS1 summoned a law enforcement agent (UC1), who was acting in an undercover capacity. UC1 drove to meet CS1 and WIMBERLY in the parking lot. UC1 was driving an unmarked, undercover car. In front of WIMBERLY, UC1 activated a hidden "trap" compartment located in his undercover car and allowed WIMBERLY to enter the back of the undercover car and

remove one kilogram of "sham" cocaine. After inspecting the cocaine, WIMBERLY placed the kilogram of "sham" cocaine back into the "trap" compartment.

*January 22, 2008 Transaction*

9. On or about January 22, 2008, CS2 received a phone call from WILLIAMS, who told CS2 that he was in Chicago. CS2 and WILLIAMS agreed to meet later that day to conduct the previously agreed upon transaction. Subsequently, CS1 placed a consensually recorded phone call to Norman WIMBERLY. During this call, CS1 and Norman WIMBERLY spoke in code regarding the amount of cocaine that would be involved in the transaction. In this consensually recorded call, CS2 asked WIMBERLY how many tickets he had and for how many girls, to which WIMBERLY replied that he had tickets for ten girls. Through my training and experience, I understand tickets to mean money and girls to mean kilograms of cocaine. Accordingly, this coded conversation, indicated that WIMBERLY was going to bring enough money to the meeting to purchase ten kilograms of cocaine.

10. Later that day, DEA agents met with CS1 and CS2. At this time, agents again searched CS1, CS2, and CS1's car for contraband and found none. In addition, CS1 was again outfitted with a hidden recording device. CS1 and CS2 then drove to the same Courtyard-Marriott hotel from their previous meeting with WILLIAMS and Norman WIMBERLY. CS1 and CS2 then met in CS1's car with WILLIAMS and another man, subsequently identified as Terry WIMBERLY, in the parking lot of the Courtyard-Marriott hotel. While CS1 and CS2 were talking with WILLIAMS and Terry WIMBERLY, DEA surveillance agents observed Norman WIMBERLY and Individual A exit a nearby Holiday Inn carrying luggage into a silver 2008 Chevy Tahoe with Georgia license plate ARX 9562. During this time, CS1, CS2, WILLIAMS and Terry WIMBERLY

drove in CS1's car to a Burger King parking lot nearby. After placing the luggage into the Chevy Tahoe, Terry WIMBERLY and Individual A drove to the same Burger King parking lot, and parked next to CS1's car.

11. After several minutes of conversation, surveillance agents observed Terry WIMBERLY remove a red bag from the back of the Chevy Tahoe and carry it into CS1's car. Inside CS1's car, CS1 and CS2 spoke with Terry WIMBERLY and WILLIAMS. While all four were in the car, CS1 and CS2 were shown a large sum of U.S. currency which was inside the red bag. WILLIAMS or Terry WIMBERLY indicated that there was $180,000 inside the bag. After a short conversation during which CS1 and CS2 argued that there should have been $190,000 in the bag as the agreed price was $19,000 per kilo, CS1 and CS2 indicated that they were willing to go forward with the transaction for $180,000. WILLIAMS then returned the red bag to the Chevy Tahoe, at which time CS1 called UC1 and gave a pre-arranged arrest signal. At this time, Norman WIMBERLY, Terry WIMBERLY, Dontavis WILLIAMS, and Individual A were all placed in custody and the red bag containing approximately $180,000 was seized by agents.

*Conclusion*

12.     Based on the aforementioned facts, I respectfully request that a criminal complaint be issued charging Norman WIMBERLY, Terry WIMBERLY, and Dontavis WILLIAMS with conspiring to knowingly and intentionally distribute, and possess with intent to distribute a controlled substance, namely cocaine, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT.

_____
Lou Gade
Special Agent
Drug Enforcement Administration

Subscribed and sworn before
me this 23rd day of January, 2008.

_____
U.S. Magistrate Judge